## CITY OF CARTHAGE ET AL. v. GEORGE M. BURTON.

Decided May 30, 1908.

**1.—Municipal Corporation—De Facto Corporation.**

When a city or town, in the manner provided by law, holds an election to determine whether the town shall be incorporated, and the election results in favor of incorporation, and the town organizes and elects officers, and the officers assume to act as such, a corporation de facto is thereby created. The State alone can institute proceedings to test the validity of its incorporation. The corporate character of the town can not be questioned in a collateral proceeding.

**2.—Abolished Municipal Corporation—Creditor—Remedy.**

Under the provisions of the Act of 1895 (Gen. Laws, page 325) the District Court of the judicial district in which a defunct municipal corporation is situated, has authority to appoint a receiver for such corporation on the petition of any creditor thereof, and, upon proper showing, to levy yearly a tax upon all property situated within the previously incorporated limits, sufficient to discharge the debts of such corporation.

**3.—Limitation—City Warrants.**

The four years, and not the two years statute of limitation applies to debts owing by a city, evidenced by its warrants.

Appeal from the District Court of Panola County. Tried below before Hon. R. B. Levy.

*J. H. Long, E. A. Hull, Frank Lawson, T. P. Young* and *H. N. Nelson,* for appellants.

*W. R. Anderson,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—By chapter 46, Special Laws of 1866, the Eleventh Legislature incorporated the town of Carthage, in Panola County. This Act was never repealed. Under it, a municipal corporation was organized and maintained for about ten years, after which no officers were elected and no elections held, nor did any persons assume to act as officers of the corporation.

On August 22, 1902, a petition signed by the requisite number of qualified voters was presented to the County Judge of Panola County, praying for an election to determine whether Carthage should be incorporated under general laws as a city having more than one thousand inhabitants. The election was duly ordered and it was held on September 18, 1902, and resulted in favor of incorporation. On September 29, 1902, the County Judge made the order, required by law, declaring the result and proclaiming the corporation complete, and caused the order to be duly recorded. Thereupon the corporation was duly organized and officers elected. The territory incorporated, as shown by the County Judge's proclamation, included "four square miles whereof the courthouse is the center." Thereafter the city of Carthage, within said limits, continued to act as, and exercised all the functions of, an incorporated city.

A resurvey of the city limits having been made by order of the city council, on March 28, 1903, the city council, at a regular meeting, adopted an ordinance reducing the superficial area to a mile square, of which the courthouse occupied the center. August 8, 1903, an election was held to determine whether the corporation should be abolished, in which a majority of the qualified voters cast their ballots in favor of abolishing the corporation, and the result was properly declared and proclaimed, and all necessary orders in relation thereto duly entered; and thereafter the city of Carthage ceased to be and to act as a municipal corporation.

After the election of September 18, 1902, and before the corporation was abolished, the city incurred indebtedness, for which it issued warrants to its creditors. The character of the indebtedness was not shown, nor was it shown whether such indebtedness was incurred before or after the area was reduced.

The appellee, claiming to be one of the creditors of the city and a holder of its warrants, brought this suit for himself and for all others similarly situated, substantially alleging the facts stated, asking for the appointment of a receiver of the city and for orders directing a levy of taxes upon all property situated within the reduced area, and to collect a sufficient sum to pay all just debts of the abolished corporation. On the trial the facts above stated were substantially proved. The trial resulted in the appointment of T. L. Anderson as receiver.

Appellants answered by general demurrer, and by five special exceptions to the plaintiff's petition, all of which were overruled, and upon this action of the trial court errors are assigned.

In support of the assignment based upon the overruling of the general demurrer appellants contend, in effect, that the allegations of the petition to the effect that the territory incorporated contained four square miles and including therein agricultural lands, showed said incorporation to be void, and that this was not cured by the resurvey and reduction of the area on March 28, 1903, for the reason that the resurvey was not recorded until April 21, 1905. That being void, the corporation could create no debts for which the property of the citizen was liable.

Appellants' contention that the resurvey was not recorded until April 21, 1905, is not borne out by the record, in that the record shows that the resurvey was recorded in the clerk's office on April 21, 1903. The city of Carthage was sought to be incorporated as a city of one thousand inhabitants, and as such its territory was limited by law to a superficial area not exceeding two square miles. Rev. Stats., art. 386a. Whether including a larger area rendered the incorporation void, it is not our purpose to inquire, nor is the determination of that question necessary to a decision of this case. The election to determine whether the city should be incorporated, the result of that election, the organization and election of officers of the corporation, and the assumption of such officers to act for it, created a corporation *de facto.* White v. Quanah, 27 S. W., 840; Ewing v. Commissioners' Court, 81 Texas, 180. Even if a municipality had been illegally constituted, the State alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter. When the question arises collaterally the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law and recognized by the State as such. Graham v. City of Greenville, 67 Texas, 67; City of El Paso v. Ruckman, 92 Texas, 89.

During the existence of the corporation it incurred debts, which are not questioned as being such as that the corporation could have made had it had a legal existence. By Act approved April 13, 1891 (Laws of 22d Leg., 95), it is provided that "When any corporation is abolished as provided in the preceding article, or if any *de facto* corporation shall be declared void by any court of competent jurisdiction, or if the same shall cease to operate and exercise the functions of such *de facto* corporation, all the property belonging thereto shall be turned over to the county treasurer of the county; and the Commissioners' Court of the county shall provide for the sale and disposition of the same and for the settlement of the debts due by the corporation; and for this purpose shall have power to levy and collect a tax from the inhabitants of said town or village in the same manner as said corporation would be entitled to under the provisions of this chapter."

It seems that before the adoption of that Act the property of the citizen could not be subjected to the payment of the debts incurred by a *de facto* corporation. But since its passage a municipal corporation, which is brought into existence by the voluntary action of persons living in the territory sought to be incorporated by reason of its being a town or city in fact, might be made liable for the debts of what is termed the *de facto* corporation. Ewing v. Commissioners' Court, 83 Texas, 666. The reason given for the rule in the case cited is that,

by the act of incorporating, with knowledge of the terms of which the law permitted them to do so, the citizens might be held to voluntarily assume the payment of the debts of the *de facto* corporation.

The city of Carthage was sought to be incorporated subsequent to the adoption of the Act in question, and it was then a city in fact which might have been legally incorporated, and it was, therefore, at least a *de facto* corporation, and the property of its citizens was liable for the debts incurred by it. This being true, the Act of 1895, page 325, authorized the District Court of Panola County to appoint a receiver of the abolished corporation on the petition of any creditor, and upon a showing, which was made in this case, that the property owned by the city was not of sufficient value to pay all claims legally established against it, to yearly levy a tax upon all real and personal property situated within the limits as previously incorporated, sufficient to discharge the same, not to exceed the rate allowed by existing law for such purposes in said city. The assignment is overruled.

What we have said in disposing of appellants' first assignment of error, disposes also of the second, fifth and sixth assignments.

The third and fourth complain of the action of the court in overruling their third and sixth special exceptions to plaintiff's petition. These exceptions in effect are that the petition shows the debts sued on were barred by the statute of limitations of two years. These assignments we also overrule. The petition shows that the debts were evidenced by warrants issued by the city. Being a debt evidenced by an instrument in writing the two years statute is not applicable.

No reversible error having been pointed out by appellant, the judgment of the District Court must be affirmed.

*Affirmed.*